# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### Honorable Howard R. Tallman

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| THE BANNING LEWIS RANCH | ) | 10-13445 KJC |
| COMPANY, LLC, *et al.*,[1] | ) | Chapter 11 |
| | ) | (Pending in the U.S. Bankruptcy Court |
| Debtors. | ) | for the District of Delaware) |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| THE BANNING LEWIS RANCH | ) | |
| COMPANY LLC, BLH NO. 1, LLC, | ) | |
| BLH NO. 2, LLC, and BANNING | ) | |
| LEWIS HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Proceeding No. 11-01634 HRT |
| v. | ) | |
| | ) | |
| CITY OF COLORADO SPRINGS, | ) | |
| COLORADO, and COLORADO | ) | |
| SPRINGS UTILITIES, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## ORDER ON PENDING MOTIONS

THIS MATTER is before the Court on the following motions and related filings:

(1)    The Motion to Intervene (docket #43) filed by Randle W. Case, the Responses thereto filed by the Plaintiffs[2] and the Defendants (docket #72 and #73,

---

[1] The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification number, are The Banning Lewis Ranch Company, LLC (4090) and Banning Lewis Ranch Development I & II, LLC (3461).

[2] At the time this adversary proceeding was filed, the Plaintiffs were the Banning Lewis Ranch Company, LLC and Ultra Resources, LLC. Following a sale of the property at issue, the current Plaintiffs were substituted as Plaintiffs, by Order of this Court entered December 12, 2014 (docket #121).

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

      respectively), the Reply filed by Mr. Case (docket #75), and the Sur-Reply filed by the Plaintiffs (docket #84);

(2)     The Plaintiffs' Motion for Partial Summary Judgment (docket #74), the Responses thereto filed by Randle W. Case and the Defendants (docket #87 and #88, respectively), and the Replies filed by the Plaintiffs (docket #92 and #94);

(3)     The Defendants' Motion to Require Joinder of Absent Annexors in Banning Lewis Ranch (docket #89), the Plaintiffs' Response (docket #97), the Defendants' Reply (docket #103), and the Plaintiffs' Sur-Reply (docket #108); and

(4)     The Defendants' Motion for Partial Summary Judgment (docket #90), the Plaintiffs' Response (docket #98), the Defendants' Reply (docket #102), and the Plaintiffs' Sur-Reply (docket #107).

The Court held oral argument on December 12, 2014, following which the pending motions were taken under advisement. Having considered the pending motions and arguments of the parties, which total well over 4,000 pages, the Court is now prepared to rule, and hereby finds and concludes as follows.

## BACKGROUND

     The following facts are undisputed, unless otherwise indicated. On the Debtors' petition date, their assets consisted principally of real property, including 17,760 acres of mostly vacant land in El Paso County, Colorado (the "Property") owned by Debtor The Banning Lewis Ranch Company LLC ("BLRC"). The Property is included in a total collection of approximately 24,000 acres of real property, referred to as Banning Lewis Ranch.

     In 1988, BLRC's predecessor in interest, Aries Properties, along with others owning property in Banning Lewis Ranch (together, the "Annexors"), entered into an Annexation Agreement with the City of Colorado Springs, Colorado (the "City"), constituting the largest annexation in the City's history. The Annexation Agreement sets forth the parties' intent that the annexation and provision of public facilities on the Annexed Property not create additional costs or impose additional burdens on the City's existing residents; instead, the costs of the anticipated public improvements and infrastructure were to be borne by the Annexors.

     Shortly after the execution of the Annexation Agreement, Aries Properties fell into default under its obligations to its secured lender, Saguaro Mortgage Services. Aries conveyed title to Saguaro, which conveyed it to Western Savings and Loan Association, which, in turn, was taken over by the Resolution Trust Corporation, which sold the Property to Banning Lewis Ranch Corporation in the 1990's. Additional conveyances and corporate restructurings followed over the next decade, culminating in BLRC's acquiring title to the Property.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

As time passed, and the Property remained vacant, other Annexors and their successors in interest pursued development in other areas of Banning Lewis Ranch. It was unclear whether any party who pursued development of a part of the Annexed Property was required to pay the full cost of improvements benefitting all of the Annexed Property, as set forth in the Annexation Agreement. In 2001, Receivers for a local improvement district in Banning Lewis Ranch filed a declaratory judgment action (the "Receiver Annexation Litigation") against the City, case number 01-CV-0566 in the El Paso County, Colorado, District Court (the "State Court"), seeking among other things a determination that the Annexation Agreement did not impose joint and several liability on the Annexors for infrastructure development costs.

BLRC appeared in the Receiver Annexation Litigation and filed a Trial Brief arguing against the Receivers' requested relief, which included rejecting the Annexation Agreement as an executory contract and selling Annexed Property free and clear of the Annexation Agreement. At that time (September 2004), BLRC stated that the Annexation Agreement was "neither impossible nor impracticable to perform," and that BLRC was "embracing the significant value the Annexation Agreement provides to all parties and is pressing forward with its efforts to develop its property."[3]

The parties to the Receiver Annexation Litigation and other Annexors, including BLRC, entered into a Settlement Agreement, which was approved by the State Court in November 2004 and recorded in the El Paso County Clerk and Recorder's Office in 2005. The Settlement Agreement provided that the Annexation Agreement did not impose joint and several liability on the Annexors for infrastructure development. Instead, the parties agreed that each Annexor would bear its proportionate share of the costs for certain defined "Shared Infrastructure" to be constructed under the Annexation Agreement and that the City would be responsible for determining such specific Shared Infrastructure costs and the appropriate allocation of such costs.

In July 2007, the City approved a study in which BLRC actively participated, which estimated that the overall infrastructure obligations under the Annexation Agreement totaled $891,842,467 for the entire Banning Lewis Ranch. The City then established the Banning Lewis Ranch Annexor Obligation Fee of $2,355 per acre; the Banning Lewis Parkway Fee of $8,163 per acre; and the Banning Lewis Interchange Fee of $1,392 per acre; for total Shared Infrastructure fees of $11,910 per acre, or approximately $200 million for the Property.

---

[3] Judicial estoppel principles do not apply here to prevent BLRC from assuming a position in this case that appears inconsistent with the position it assumed in the Receiver Annexation Litigation, *see Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (setting forth requirements of judicial estoppel), but the Trial Brief that BLRC filed with the State Court on September 7, 2004, does provide a persuasive argument against BLRC's position in this case.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

     BLRC did not proceed with development, and the Property remained vacant while residential development occurred in other areas of Banning Lewis Ranch.  On October 28, 2010, the Debtors filed their voluntary Chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court").  The bankruptcy cases were jointly administered under the lead case of BLRC (the "Debtor").  The City requested that the Delaware Court transfer venue of the bankruptcy cases to the United States Bankruptcy Court for the District of Colorado ("this Court").  The Delaware Court denied the City's requests.

     In May of 2011, the Delaware Court established procedures for the sale of substantially all of the Debtors' assets, with an auction to take place in June of 2011.  The Debtor filed its Sale Motion asking the Delaware Court to approve the sale of the Debtors' assets, including the Property, free and clear of liens, claims, encumbrances, and other interests.  The Debtor asserts that all Annexors were served with notice of the Sale Motion.[4]  No Annexor filed an objection to the Sale Motion.[5]  The City did file an Objection to the Sale Motion, asserting that the Property could not be sold free and clear of the Debtor's prepetition agreements with the City, including the Annexation Agreement.  The City also filed a renewed motion to transfer venue of the Debtors' bankruptcy cases to this Court.

     While the Sale Motion was pending, the auction was held as scheduled, with two parties participating in forty rounds of bidding to purchase the Property.  Ultra Resources, Inc., the prior Plaintiff in this adversary proceeding, was declared the winning bidder.  The Property was sold to Ultra for a total purchase price of $20 million, which was less than the $25.3 million first position claim secured by the Property.

     At its hearing on the Sale Motion, the Delaware Court made clear that the parties needed to reach a consensual arrangement, barring which the sale would not work, and relief from stay would likely be granted to the first position secured creditor.  The parties subsequently reached an agreement that severed from the Sale Hearing the resolution of their disputes as to the

---

    [4]  Potential intervenor Randle W. Case asserts that he is an Annexor.  According to the Debtor and the City, Mr. Case, individually, is not an Annexor.  Instead, the Debtor and the City assert that an LLC of which Mr. Case is the manager,  Marksheffel-Woodmen Investments, LLC ("MWI"), is an Annexor.  The Court need not resolve the specific question of which party is the Annexor.  MWI was served with notice of the Sale Motion, and Mr. Case, individually, had actual notice of the Sale Motion.

    [5]  Neither Mr. Case nor MWI filed an objection to the Sale Motion.  MWI, through counsel, submitted an affidavit in support of the City's objection to the Sale Motion.  The Debtor asserts that Mr. Case attended a hearing on the Sale Motion, as a potential witness for the City.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

applicability of 11 U.S.C. §§ 363(f)(1), 363(f)(5), and 365.[6]  The Debtor and Ultra agreed to file an adversary proceeding seeking a declaratory judgment on those issues, and to request that the adversary proceeding be transferred to this Court for resolution.

Following the parties' agreement, the Delaware Court entered its Sale Order approving the sale of the Property to Ultra.  The Debtor and Ultra (the "Plaintiffs") filed the instant adversary proceeding against the City and its Enterprise, Colorado Springs Utilities (the "Defendants"), on September 16, 2011, and the Delaware Court promptly transferred venue of the adversary proceeding to this Court.  The adversary proceeding was held in abeyance for two and a half years while the parties participated in dispute resolution efforts.  In March of 2014, at the parties' request, the Court terminated the abeyance, and the parties subsequently filed the above-listed pending motions.

While the motions were pending, Ultra sold the Property to BLH No. 1, LLC, a Colorado limited liability company, BLH No. 2, LLC, a Colorado limited liability company, and Banning Lewis Holdings, LLC, a Colorado limited liability company (collectively, "Banning Lewis Holdings").  In connection with the sale of the Property, Ultra assigned to Banning Lewis Holdings all of its claims, rights, and interests in this adversary proceeding.  The Court substituted Banning Lewis Holdings as Plaintiffs by Order entered December 12, 2014.  Also on December 12, 2014, the Court heard oral argument on the pending motions.  Following oral argument, the pending motions and related filings were taken under advisement.

## DISCUSSION

The Plaintiffs' motion for partial summary judgment seeks a declaration that the Annexation Agreement and other Agreements flowing therefrom[7] are "executory contracts" within the scope of 11 U.S.C. § 365, subject to rejection.  The Defendants' cross-motion for partial summary judgment seeks a declaration that the Annexation Agreement and other Agreements flowing therefrom are not the types of rights or interests that can be stripped away from property sold by a debtor under 11 U.S.C. § 363(f), and that the Annexation Agreement and other Agreements are not executory contracts within § 365.  The Defendants ask the Court to require the joinder of other Annexors to this adversary proceeding, and Randle Case,

---

[6]  The parties agreed that the Debtor and Ultra would not pursue a claim for relief under § 363(f)(4), which provides for a sale free and clear of interests that are in bona fide dispute.  The Delaware Court found in its Sale Order that § 363(f)(4) was not available to the parties.

[7]  The Agreements, identified in Exhibits A and B to the Defendants' Answer and Counterclaim, include plats, surveys, water facilities agreements, bills of sale with warranties, and easements, most or all of which are recorded in El Paso County, Colorado.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

individually, seeks to intervene as a party to this adversary proceeding.  The Court will discuss each in turn, mindful that a declaratory judgment requires consideration of the following factors:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), *quoted in Marlin Oil Corp. v. Lurie*, 417 Fed. Appx. 740, 745 (10th Cir. 2011).

### A.    Executory Contract under 11 U.S.C. § 365

Section 365 provides that a trustee (here, a debtor in possession) "may assume or reject any executory contract or unexpired lease of the debtor."  The Bankruptcy Code does not define the term "executory contract," but the Tenth Circuit Court of Appeals has adopted the widely-followed Countryman definition:

> a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973); *adopted by In re Baird*, 567 F.3d 1207, 1211 (10th Cir. 2009).

As an initial matter, the Court must address whether the Annexation Agreement and other Agreements flowing therefrom are "contracts" at all.  To be sure, the Annexation Agreement originated from "an agreement between two or more parties," *Black's Law Dictionary* 318 (7th ed. 1999) (first definition of "contract"), a meeting of the minds of the Annexors and the City. But, upon compliance with the requirements of the Colorado Municipal Annexation Act, Colo. Rev. Stat. § 31-12-101 *et seq.*, the Annexation Agreement became a legislative act that set the boundaries of the City.  *See Town of Minturn v. Sensible Housing Co.*, 273 P.3d 1154, 1159

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

(Colo. 2012) ("[A]nnexations are legislative proceedings.").[8]  At that point, the Annexation Agreement was no longer a contract, much less an executory one.

Even if the Annexation Agreement could be considered a contract, the Court cannot find that it meets the Countryman definition of an executory contract.  As the Defendants point out, the purpose of the Annexation Agreement was to bring the Annexed Property into the City's boundaries, and that purpose has been fulfilled.  Although the Annexation Agreement anticipates development to occur over a 60-year time period, there is no termination or reversion at the end of the 60 years.  The Annexed Property remains part of the City, and as such the City remains obligated to provide municipal services, irrespective of the provisions of the Annexation Agreement.  From the City's standpoint, it does not appear that the Debtor or the Debtor's successor in interest's failure to perform its obligations under the Annexation Agreement would relieve the City of its obligations to provide municipal services to the Annexed Property.

From the Debtor's standpoint, while the Annexation Agreement anticipates that the Annexed Property will be developed, it does not require that development to occur.  The parties agree that there has been no breach of the Annexation Agreement's obligations, even though neither the Debtor nor its predecessors in interest developed the Property.  Given that the Debtor had the unilateral option to develop the Property (albeit in accordance with applicable zoning and other provisions, as required by 28 U.S.C. § 959(b)) or to not develop the Property, the Countryman requirements are not satisfied.  *See* Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. Colo. L.Rev. 1, 32 (1991) (When a debtor's performance is completely optional, "it cannot be said that 'the failure of either [party] to complete performance would constitute a material breach excusing the performance of the other.'").  Considering the established test for "executoriness,"[9] the Court cannot find that the Annexation Agreement is an executory contract.  Other Agreements, such as the Settlement Agreement pursuant to which the City established applicable per-acre fees, are even further removed from executoriness.

---

[8]  The Plaintiffs argue that the Annexation Agreement cannot be considered a law because it is not a mandatory decree, enforceable by sanction.  While the Plaintiffs' argument may be well-supported by principles of rhetoric, it is not well-supported by Colorado law, which provides that annexation is a legislative act.

[9]  The term "executoriness," which may have been coined by Professor Andrew, has been adopted by many courts in the context of § 365.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

Even if this Court were to abandon the established test for executoriness, as urged by Professors Andrew and Westbrook,[10] or if the Court were to find the test satisfied in this case, the Court could not grant the Plaintiffs their requested relief. Section 365 provides two choices for a debtor party to an executory contract: assumption or rejection. In this case, the Debtor does not intend to assume the Annexation Agreement or any other applicable Agreement – the Debtor no longer owns the Property in question and would be unable to fulfill the requirements of assumption. *See* § 365(b)(1). Instead, the Debtor intends to attempt to reject each applicable Agreement.

"[R]ejection of an executory contract serves two purposes. It relieves the debtor of burdensome future obligations while [it] is trying to recover financially and it constitutes a breach of a contract which permits the other party to file a creditor's claim." *In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006) (further quotation omitted). Here, the applicable Agreements do not require the Debtor to develop the Property, so no party can assert a claim against the Debtor for its failure to develop. There is no need to relieve the Debtor of any burdensome future obligation to develop the Property, which has now been sold (twice). Rejecting the Annexation Agreement would serve no purpose in this case.

Clearly, the Plaintiffs did not bring this adversary proceeding to determine whether or in what amount the City may file a proof of claim in the Debtor's case. Here, there is expected to be no distribution to unsecured creditors, so any such claim would have no net effect. Instead, the Plaintiffs are seeking to "reject" the Annexation Agreement or other Agreements in order to accomplish a termination or rescission of the Agreements, such that the Debtor and its successors in interest would not be bound by the Agreements. Section 365 does not accomplish this result.

---

[10] *See* Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding 'Rejection'*, 59 U. Colo. L.Rev. 845 (1988) (discussing the confusion that has arisen in cases applying § 365 and proposing a simpler approach, based on the historical distinction between the pre-bankruptcy debtor and the post-filing bankruptcy estate); Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn. L.Rev. 227 (1989) (also discussing confusion in cases applying § 365 and proposing a simpler approach, based on functional analysis); Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. Colo. L.Rev. 1 (1991) (noting the many areas of agreement with Professor Westbrook's analysis of executory contract law, but disagreeing with Professor Westbrook's proposed solution). Under either Professor's approach, there would be no need to determine whether a particular contract is executory: any contract would be subject to rejection, with rejection giving rise to an appropriate state-law remedy for breach of the rejected contract, but otherwise having no effect on the contract's continued existence.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

As several courts of appeal have held, "rejection" of a contract under § 365 does not mean "termination" of the contract:

> Turning to § 365, the terms rejection, breach and termination are used differently, but not inconsistently or interchangeably, as some courts have suggested. Throughout § 365, rejection refers to the debtor's decision not to assume a burdensome lease or executory contract. Section 365(g) states that rejection of a lease "constitutes a breach" except as provided in subsections (h)(2) and (i)(2). Three circuits, including this one, have held that this language does not mean that the executory contract or lease has been terminated, but only that a breach has been deemed to occur. *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir. 1993) ("to assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached"); *In re Modern Textile, Inc.*, 900 F.2d 1184, 1191 (8th Cir. 1990); *Leasing Service Corp. v. First Tennessee Bank, Nat'l Ass'n*, 826 F.2d 434, 436-37 (6th Cir. 1987).

*In re Austin Development Co.*, 19 F.3d 1077, 1082 (5th Cir. 1994) (citation omitted).

Similarly, rejection of a contract does not work a rescission of the contract and is not, itself, an avoiding power. *Sunbeam Products, Inc. v. Chicago American Mfg., LLC*, 686 F.3d 372, 377 (7th Cir. 2012); *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007); Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. Colo. L.Rev. 1, 16-17 (1991). Thus, while the Debtor may use rejection under § 365 to free itself from any obligation to develop the Property or to pay damages for any breach of the applicable Agreements, the Agreements themselves remain valid and enforceable. All non-debtor parties' rights "persist if they would persist under state law." *In re Bergt*, 241 B.R. 17, 25 (Bankr. D. Alaska 1999) (citing Professor Andrew and Westbrook's articles).

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

In this case, because the Agreements are of the type that run with the land[11] and are properly recorded, the Agreements are not only valid and enforceable among the non-debtor parties such as the City or the other Annexors, but they are also binding on the Debtor's successors in interest. *See Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Associates*, 867 P.2d 70, 74 (Colo. Ct. App. 1993) ("Unlike personal covenants, which operate like a general contract provision and bind only the actual parties to the covenant, real covenants 'run with the land' and burden or benefit successors in interest."). As such, the Debtor's rejecting the Agreements would serve no purpose at all.

Considering the undisputed facts, the applicable law, and the relevant declaratory judgment factors, *see State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), the Court cannot find that a judgment in favor of the Plaintiffs would settle the controversy or serve a useful purpose. The Agreements in question are not executory contracts under § 365 because they are neither "contracts" nor "executory." Even if rejection under § 365 were available to the Debtor, any such rejection would have no effect on the Debtor, its estate, its creditors, or any other parties to the Agreements or their successors in interest, including the Debtor's successors in interest. A declaratory judgment in favor of the Plaintiffs would increase friction between our federal and state courts and improperly encroach upon state jurisdiction. To the extent that the Plaintiffs no longer wish for their Property to be annexed into the City, a better and more effective remedy would be to pursue disconnection under applicable Colorado statutes. *See, e.g., City of Littleton v. Wagenblast*, 338 P.2d 1025 (Colo. 1959) (like annexation, disconnection is a legislative function, and parties must comply with applicable statutes in order to obtain the requested relief). The relief of declaratory judgment is not appropriately granted to the Plaintiffs in this case. The Court will therefore deny the Plaintiffs' motion for partial summary judgment and will grant the Defendants' motion for partial summary judgment in this respect.

---

[11]  In order for a covenant to run with the land, the parties to the covenant must intend that it do so, *Brown v. McDavid*, 676 P.2d 714 (Colo. Ct. App. 1983), and the covenant must "touch and concern" the land. *Bigelow v. Nottingham*, 833 P.2d 764 (Colo. Ct. App. 1991). Here, there is no dispute that each requirement is satisfied. The Annexation Agreement specifically provides that it "shall be recorded with the Clerk and Recorder in El Paso County, Colorado and shall run with the land, and shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto, and all persons or entities now or hereafter having an interest in the Property." Annexation Agreement, Article XIX. Other Agreements contain similar indications of the parties' intent to create covenants that run with the land. And, the Annexation Agreement and other Agreements "closely relate to the land, its use, or its enjoyment." *Cloud v. Association of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435, 440 (Colo. Ct. App. 1992) (defining "touch and concern").

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

### B.      Sale Free and Clear under 11 U.S.C. § 363(f)

Section 363(f) provides, in relevant part, that a trustee (or here, a debtor in possession) may sell property free and clear of any interest of another entity if:

(1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

. . . or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1), (5).[12]

As an initial matter, the Court must determine whether § 363(f) applies here to allow a sale free and clear of the Annexation Agreement and other Agreements flowing therefrom.  This Court previously held that restrictions of record that run with the land are not "interests" that fall within § 363.  *In re Lonesome Pine Holdings, LLC*, Case No. 10-34560 HRT (Bankr. D. Colo. Sept. 9, 2011).  The Plaintiffs argue that *Lonesome Pine* is inapposite, based on factual distinctions between the Colorado Water Court order and town ordinances at issue in *Lonesome Pine* and the Agreements at issue in this case.  The Court is not persuaded.  The Plaintiffs further cite cases from other jurisdictions allowing sales free and clear of restrictive covenants.  The Court does not find those cases to compel a different conclusion in this case.

Cases allowing sales free and clear of restrictive covenants, such as *In re Daufuskie Island Properties, LLC*, Case No. 09-00389-jw, 2010 Bankr. LEXIS 5533 (Bankr. D. S.C. May 7, 2010), have held that the term "interest" should be interpreted broadly.  But, those courts have

---

[12]  The parties agreed that the Debtor and Ultra would not pursue a claim for relief under § 363(f)(4), which provides for a sale free and clear of interests that are in bona fide dispute.  Even if they had pursued such a claim, the Court could not find the existence of a bona fide dispute here, given the limitations set forth in Colo. Rev. Stat. § 31-12-116.  The requirement to bring a review proceeding within 60 days is jurisdictional; it cannot be tolled or waived, and it is a condition precedent to the exercise of the right to challenge the annexation.  *Board of County Com'rs of Jefferson County v. City and County of Denver*, 546 P.2d 497 (Colo. 1976) (applying the then-applicable time period of 45 days); *see also In re Southcreek Development, LLC*, Case No. 10-CV-2136, 2010 WL 4683607 (C.D. Ill. Oct. 25, 2010) (holding that a dispute asserted after the expiration of the applicable time period for challenging an annexation cannot be considered "bona fide" under § 363(f)(4)).

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

also held that the term "interest" is defined by state property law. *Id*. In *Daufuskie Island Properties*, the court applied South Carolina law, including a case from the South Carolina Court of Appeals holding that restrictive covenants constitute an interest in property subject to § 363(f). Courts in other jurisdictions have reached contrary results. *See, e.g., In re Skyline Woods Country Club*, 636 F.3d 467 (8th Cir. 2011) (applying law from the Nebraska Supreme Court holding that restrictive covenants could not be extinguished under § 363(f)).

The Plaintiffs have pointed to no authority from the state of Colorado, and this Court's research has not revealed any. But, even if applicable Colorado law generally held that restrictive covenants were subject to free and clear sales under § 363(f), the Annexation Agreement here is not simply a restrictive covenant between or among neighboring property owners; it is a legislative proceeding over which a court's authority is limited. *Town of Minturn v. Sensible Housing Co.*, 273 P.3d 1154, 1159-60 (Colo. 2012); Colo. Rev. Stat. § 31-12-116 (providing for limited judicial review of annexation proceedings). Given the particular nature of annexation agreements under applicable Colorado law, the Court cannot find that they are properly included as "interests" under § 363. The Court finds as a matter of law that the Property may not be sold free and clear of the Annexation Agreement and other Agreements flowing therefrom under § 363(f), and the Court will grant the Defendants' motion for partial summary judgment in this respect.

The Court's holding that § 363(f) does not apply to the Annexation Agreement and other Agreements as a matter of law eliminates the need for any specific discussion of subsections 363(f)(1) or (f)(5). However, out of an abundance of caution, the Court will specifically address each subsection, as an alternative holding.

### § 363(f)(1): Applicable Nonbankruptcy Law

Section 363(f)(1) looks to applicable nonbankruptcy law. The Plaintiffs have asserted two possible bases for a conclusion that Colorado law would allow the sale of the Property free and clear of the Annexation Agreement and other Agreements: the Agreements constitute an unreasonable restraint on alienation, or changed circumstances render the Agreements unenforceable. The Court will address each in turn.

First, Colorado law recognizes that the common law rule against restraints on alienation prohibits restraints that are unreasonable. *Malouff v. Midland Fed. Sav. and Loan Ass'n*, 509 P. 2d 1240, 1243 (Colo. 1973) (finding that a deed of trust's "due on sale" acceleration clause was a restraint on alienation, but not an unreasonable one). Courts in other jurisdictions have recognized that restrictive covenants constituting unreasonable restraints on alienation are subject to free and clear sales under § 363(f)(1). *See, e.g, In re TOUSA, Inc.*, 393 B.R. 920 (Bankr. S.D. Fla. 2008) (allowing a sale free and clear of a restrictive covenant prohibiting sales of neighboring lots for less than a specified minimum purchase price, which the court found to be an unreasonable restraint on alienation). The restrictive covenants at issue in *Malouff* and

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

*TOUSA* were direct restraints on alienation because they attempted to limit or penalize sales of the property in question. Here, the Plaintiffs have pointed to no provisions in any of the Agreements that attempt to limit or penalize sales of the Property. The Property is freely alienable, as evidenced by the Debtor's purchase of the Property well after the Annexation Agreement became law, and as further evidenced by the Debtor's sale of the Property to Ultra and Ultra's subsequent sale of the Property to Banning Lewis Holdings.[13] In the absence of any provisions constituting a restraint on alienation at all, the Court is hard-pressed to find an unreasonable restraint on alienation.

The Plaintiffs may argue that the Agreements constitute an indirect restraint on alienation. The U.S. District Court for the District of Colorado has recognized this doctrine, at least in theory, explaining:

> Unlike a direct restraint, an indirect restraint does not place express limitations on the owner's right to convey the property. An indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability.

*CBS Outdoor, Inc. v. 800 Lincoln LLC*, Case No. 11-cv-02233-WYD-MJW, 2012 WL 4356241, at *20 n.13 (D.Colo. Sept. 24, 2012) (quoting *Lamar Advertising v. Larry and Vickie Nicholls, L.L.C.*, 213 P.3d 641, 644 (Wyo. 2009) (further quotation omitted)). The *CBS Outdoor* court applied a less stringent "rational justification" test to an indirect restraint on alienation. *Id.* Under the rational justification test, "[t]he fact that the servitude limits the market for property by limiting its use or reducing its value . . . is irrelevant in determining its validity, so long as there is some rational justification for creation of the servitude." *Id.* (quoting the Restatement (Third) of Property: Servitudes § 3.5 cmt. a).

Here, the Annexation Agreement specifically provides that its purpose is to annex the property into the City and provide for its development at no additional cost to the City's existing residents, which supports a conclusion that the Annexation Agreement had a rational basis at the time it was created. As the party asserting an unreasonable restraint on alienation, the Plaintiffs have the burden of producing evidence supporting the opposite conclusion. The Plaintiffs have presented no such evidence. The Court cannot find that a genuine issue remains for trial.

Even if the rational justification test were not the appropriate test, and instead the Court were required to determine whether the Agreements were reasonable "in view of the justifiable interests of the parties," *Malouff*, 509 P.2d at 1243, the Court cannot find that the Annexation

---

[13] Both the sale to Ultra and the subsequent sale to Banning Lewis Holdings were final sales, not contingent on any particular result or outcome in this adversary proceeding.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

Agreement and other Agreements flowing therefrom fail to meet the justifiable interests of the parties. All the evidence before the Court supports a conclusion that the Agreements met the justifiable interests of the parties, both at the time they became effective and at later times in the Property's history.[14] The Plaintiffs have not shown that a genuine issue remains for trial, and the Defendants are therefore entitled to a judgment in their favor. The Court finds as a matter of law that the doctrine of unreasonable restraint on alienation would not allow the sale free and clear of the Annexation Agreement or other Agreements under § 365(f)(1).

The Plaintiffs have offered one other possible basis of applicable nonbankruptcy law: the doctrine of changed circumstances. Colorado law recognizes that courts have the power to remove or cancel restrictive covenants when "it is shown that the restrictive covenants no longer serve the purpose for which they were imposed and are no longer beneficial to those claiming under them." *Zavislak v. Shipman*, 362 P.2d 1053, 1055 (Colo. 1961). Here, the Plaintiffs assert that circumstances have changed substantially over the past 25 years, such that enforcement of the Agreements imposes an oppressive burden prohibiting development of the Property.[15] But even if the Plaintiffs' evidence is sufficient to satisfy the first part of the two-part test, the Court cannot find that the Plaintiffs' evidence is sufficient to satisfy the second part. In the absence of a showing that the Annexation Agreement and other Agreements no longer provide a benefit to the City and the other Annexors, the Agreements cannot be set aside. *West Alameda Heights Homeowners Ass'n v. Board of County Comm'rs of Jefferson County*, 458 P.2d 253, 256 (Colo. 1969) ("[Changed circumstances] will not warrant the lifting of restrictive covenants affecting property within the subdivision if the covenants are still a benefit to the owners of the property under the restrictions."). Here, all the evidence before the Court supports a conclusion that the Agreements provide a benefit to the City (particularly the City's existing residents, the stated beneficiaries of the Annexation Agreement's requirement that development costs be borne by the Annexors) and the other Annexors. In the absence of a genuine issue for trial, summary judgment is appropriately granted to the City. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 257 (1986).

The Court notes that the pending cross-motions for partial summary judgment were filed at a relatively early stage in the adversary proceeding, and discovery has not been completed.

---

[14] The Court notes that in late 2004, in the Receiver Annexation Litigation, BLRC previously asserted that the Annexation Agreement provided "significant value . . . to all parties." Trial Brief at 40.

[15] The Plaintiffs' claim is undercut by BLRC's assertion in late 2004, in the Receiver Annexation Litigation, that the obligations of the Annexation Agreement were "neither impossible nor impractical to perform." Trial Brief at 2. But, at this stage, on the Defendants' motion for summary judgment, the Court will resolve its doubts in favor of the Plaintiffs and assume that, in light of changed circumstances, the Agreements impose an oppressive burden.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

But, the pendency of discovery does not, by itself, provide a justification for denial of summary judgment. *Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1518 (10th Cir. 1994) ("[T]here is no requirement in Rule 56, Fed. R. Civ. P., that summary judgment not be entered until discovery is complete."). A party opposing summary judgment on the ground that essential facts are unavailable must comply with Fed. R. Civ. P. 56(d). Here, the Plaintiffs filed no such affidavit or declaration. In the absence of an explanation of how any additional opportunity for discovery would enable the Plaintiffs to meet their burden in opposing summary judgment, the Court may proceed to grant the Defendants' motion. *See Guthrie v. Sawyer*, 970 F.2d 733, 738 (10th Cir. 1992) (applying the rule then-codified at Fed. R. Civ. P. 56(f)).

Finally, the Court notes that the Plaintiffs are seeking a declaratory judgment. When considering whether to grant a declaratory judgment, this Court must take into account "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction" and "whether there is an alternative remedy which is better or more effective." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). Here, the Court finds that both factors strongly support denial of declaratory relief under § 363(f)(1). The Plaintiffs are seeking to set aside an Annexation Agreement, a matter of state law to which Colorado courts have accorded great deference. If Colorado law would allow any court to set aside the Annexation Agreement under either theory asserted by the Plaintiffs, then the Plaintiffs would be able to obtain that same relief by bringing a quiet title action in the State Court. A quiet title action would bind not only the parties to this proceeding, but all other parties who may later assert a right to enforce the provisions of the Agreements – a better and more effective remedy for the Plaintiffs. *See DeJean v. Grosz*, No. 13-cv-02381-BNB-MJW, 2014 WL 5488406, at *9 n.6 (D. Colo. Oct. 29, 2014) (noting the benefits of a quiet title action). The Court therefore finds that declaratory judgment is not appropriately granted to the Plaintiffs on their claim for relief under § 365(f)(1). The Court will grant the Defendants' motion for partial summary judgment in this respect.

### § 363(f)(5): Compelled to Accept Money Satisfaction

Turning to the remaining subsection, § 365(f)(5), the Court must determine whether the City could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interests under the Annexation Agreement and other Agreements. Courts in other jurisdictions have identified hypothetical proceedings in which a variety of interest holders could be forced to accept a money satisfaction of their interests, from enforcement of buy-out or agreed damages provisions, to tax sales or foreclosure sales. *See, e.g., In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009) (discussing several types of hypothetical proceedings).[16] None of those hypothetical proceedings would apply here. The Annexation Agreement does not contain a buy-

---

[16] The Court cites *Jolan* only as a reference to the hypothetical proceedings discussed in that case, none of which are applicable here.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

out or agreed damages provision for this Court to enforce, and neither a tax sale nor a foreclosure sale would extinguish the Annexation Agreement. *See, e.g., Village of Orland Park v. First Fed. Sav. & Loan Ass'n of Chicago*, 481 N.E.2d 946, 950-51 (Ill. App. 1985) (foreclosure sale did not extinguish annexation agreement); *Wolff v. Steiner*, 87 N.W.2d 85, 90-91 (Mich. 1957) (zoning ordinances are not affected by a tax foreclosure sale).

The Plaintiffs point to the Annexation Agreement's election of remedies clause, which provides, in relevant part, that "the non-defaulting party may elect, at its discretion, either to cure the default and recover the cost thereof from the defaulting party, or seek to enjoin the default if of a continuing nature, or seek specific performance and/or damages." Annexation Agreement § XIX(M). The election of remedies clause would allow the City, as a non-defaulting party, to *choose* to pursue damages. But, the election of remedies clause does not require or compel the City to accept damages in lieu of specific performance. As the Seventh Circuit Court of Appeals explained:

> In reading the text of the statute we note that an entity must be able to be "compelled" to accept money damages in lieu of equitable enforcement before subsection (5) will apply. From this language we conclude that if the money damages are available upon the consent of those who hold the covenant, then such persons are not compelled to accept money, and thus § 363(f)(5) does not apply.

*Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994).

The Plaintiffs criticize *Gouveia*, citing the case of *In re Signature Developments, Inc.*, 348 B.R. 758 (Bankr. E.D. Mich. 2006), which noted that a court should recognize its own power to compel a non-breaching party to accept money damages. *Id.* at 764. Taken to its logical extreme, the *Signature Developments* reasoning proves too much: if a court can approve a sale under § 363(f)(5) simply because a court has the power to compel the acceptance of money damages, then there would be no case in which § 363(f)(5) would not apply. The exception would swallow the rule. But, there is no need to consider the logical extreme of the *Signature Developments* court's reasoning, because the court's own holding reveals that it is limited. *Signature Developments* distinguished *Gouveia*, noting that in *Gouveia*, the restrictive covenant at issue was one that was properly enforced by "classic injunctive equitable relief," while the restriction at issue in *Signature Developments* was one that was properly enforced by money damages. *Id.* at 767. Here, the Annexation Agreement is not one that is properly enforced by money damages.[17] The Agreements are at least as susceptible to enforcement by injunctive relief as the restrictive covenant in *Gouveia*. The election of remedies provisions in the Agreements cannot form a basis for this Court to compel the City to accept money damages.

_____

[17] The Plaintiffs have attempted to characterize the Agreements as predominantly monetary arrangements, but the evidence belies any such characterization.

Page 16 of 21

Considering the undisputed facts and the requirements for issuance of a declaratory judgment, the Court cannot find that the Plaintiffs are entitled to a declaratory judgment in their favor under § 363(f)(5).  There is no basis for a court to compel the City to accept a monetary satisfaction of its interests under the Annexation Agreement or other Agreements, and any judgment granting that relief would "increase friction between our federal and state courts and improperly encroach upon state jurisdiction."  *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).  The Court will grant the Defendants' motion for partial summary judgment in this respect.

### Conclusion

In summary, the Court finds as a matter of law that § 363(f) does not apply to the Annexation Agreement and other Agreements flowing therefrom.  As an alternative holding, the Court has considered each applicable subsection of § 363(f).  As for § 363(f)(1), the Court cannot find that applicable bankruptcy law would permit the sale of the Property free and clear of the Annexation Agreement and other Agreements, as the Plaintiffs have not presented evidence supporting a judgment in their favor on their claims under the doctrines of unreasonable restraints on alienation or changed circumstances.  As for § 363(f)(5), the Court cannot find that the City could be compelled to accept a money satisfaction of its interests under the Annexation Agreement or other Agreements.  The Court will therefore grant summary judgment in favor of the Defendants on the second and third counts for relief of the Plaintiffs' Complaint.

### C.      Joinder of Additional Parties and Motion to Intervene

Randle W. Case seeks to intervene as a Defendant in this adversary proceeding, asserting that he is an Annexor in Banning Lewis Ranch.[18]  The Defendants ask the Court to require joinder of all the Annexors in Banning Lewis Ranch.  The parties disagree as to whether other Annexors in Banning Lewis Ranch are appropriately added as parties to this adversary proceeding, either on their own request under Fed. R. Civ. P.  24, incorporated herein by Fed. R. Bankr. P. 7024, or on the City's request under Fed. R. Civ. P. 19, incorporated herein by Fed. R. Bankr. P. 7019.  The two rules overlap:

Rule 19(a)(2)(i) [now Rule 19(a)(1)(B)(i)] applies if a person "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may as a practical matter impair or impede the

---

[18]  According to the Plaintiffs and the Defendants, Mr. Case, individually, is not an Annexor.  Instead, the parties assert that an LLC of which Mr. Case is the manager, Marksheffel-Woodmen Investments, LLC, is an Annexor.  The Court need not resolve the specific question of which party should be added as a defendant.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

person's ability to protect that interest."  Similarly, Rule 24(a)(2) provides for
intervention as of right "when the applicant claims an interest relating to the
property or transaction which is the subject of the action and the applicant is so
situated that the disposition of the action may as a practical matter impair or
impede the person's ability to protect that interest, unless the applicant's interest
is adequately represented by existing parties."  These rules are intended to mirror
each other.  *See* Fed. R. Civ. P. 24 advisory committee's note ("Intervention of
right is here seen to be a kind of counterpart to Rule 19(a)(2)(i).... The [1966]
amendment provides that an applicant is entitled to intervene in an action when
his position is comparable to that of a person under Rule 19(a)(2)(i)."); 4 James
Wm. Moore et al., *Moore's Federal Practice-Civil*, § 19.03(3)(f)(i) (3d ed. 2006)
("[C]ompulsory joinder under the 'impair or impede' clause of Rule 19 serves the
same goal as intervention of right under Rule 24.  Indeed, the operative language
of the two Rules is identical because the Rules were revised to emphasize their
interrelationship in 1966.") (internal citation omitted).

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389-90 (2d Cir. 2006).

The Plaintiffs assert that this adversary proceeding, which is the result of a settlement
agreement between the Plaintiffs and the Defendants providing a mechanism for those parties to
resolve their dispute regarding the sale of the Debtor's Property, should be limited to the specific
parties involved, particularly where no other party objected to the sale nor had standing to do so.
Mr. Case and the Defendants argue that the disposition of the adversary proceeding will, as a
practical matter, impair or impede the other Annexors' ability to protect their interests in their
property.

In the Court's view, if the Plaintiffs were to obtain a declaratory judgment allowing the
Debtor to rescind the Annexation Agreement or allowing the Property to be sold free and clear of
the Annexation Agreement, the property interests of the other Annexors would be affected.  The
Annexors are all parties to the Annexation Agreement, and in the contract context, courts often
find joint obligees to be indispensable (or, under the revised rules, "required") parties.  *See, e.g.,
Acton Co. Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 81-82 (1st Cir.1982) (in an action
seeking recision of a contract, all parties to the contract and others having a substantial interest in
it are indispensable parties).  But, given the Court's ruling as set forth above, the Court cannot
find that the disposition of this adversary proceeding will impair or impede any Annexor's
rights.  Both Mr. Case's Motion to Intervene and the Defendants' Motion to Require Joinder of
Absent Annexors in Banning Lewis Ranch will be denied.

### D.   Remaining Issues

The result of the Court's ruling that the Defendants are entitled to partial summary
judgment in their favor is that judgment in favor of the Defendants will enter on all three counts

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

of the Plaintiffs' Complaint and on the first two claims for relief of the Defendants' Amended Counterclaim.  No party sought summary judgment on the remaining three claims for relief of the Defendants' Amended Counterclaim, in which the Defendants seek a declaratory judgment as follows:

> On the Third Claim for Relief, that (1) the Annexation Agreement conveyed title to any and all water and water rights associated with the Property, including the Adjudicated Water Rights, to Colorado Springs; and (2) that Colorado Springs' claim to title in all water and water rights associated with the Property is superior to Ultra's claim to any and all water and water rights associated with the Property;

> On the Fourth Claim for Relief, that Colorado Springs is the owner of the inchoate right to withdraw and use any unadjudicated tributary and nontributary ground water underlying the Property; and

> On the Fifth Claim for Relief, if the Court finds that the Annexation Agreement did not convey title to the Water Rights to Colorado Springs, that (1) Colorado Springs has the perpetual contractual right to solely and exclusively withdraw, appropriate, and use any and all ground water underlying the Property and any and all surface water rights on the Property, including the Adjudicated Water Rights and any un-adjudicated groundwater; and (2) that any transfer of water rights by Debtor BLRC to Ultra remains subject to the City's perpetual contractual right to the withdraw, appropriate and use the water previously granted in the Annexation Agreement or otherwise.

Amended Counterclaim at 20.  It is not clear that this Court has jurisdiction to determine these matters of state water law that appear to have no impact on the Debtor's bankruptcy case.[19]  But even if this Court had sufficient jurisdiction, combined with the consent of the parties as set forth in *Wellness International Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015), the Court has

---

[19]  This Court's jurisdiction originates from 28 U.S.C. § 1334, which provides, in relevant part: "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  If a matter does not "arise under" the Bankruptcy Code, or does not "arise in" or is not "related to" a bankruptcy case, a bankruptcy court cannot exercise jurisdiction.  *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 770-71 (10th Cir. BAP 1997) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995)).  Here, a determination of water rights does not arise under the Bankruptcy Code, nor does it arise in the Debtor's bankruptcy case.  This Court would have "related to" jurisdiction only if the outcome of this proceeding could conceivably have an effect on the Debtor's bankruptcy case, which appears extremely unlikely.

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

nevertheless determined that permissive abstention under 28 U.S.C. § 1334(c)(1) is appropriate on the Defendants' remaining claims for relief.[20]

The Court has considered the following factors:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Schempp Real Estate, LLC,* 303 B.R. 866, 875 -876 (Bankr. D. Colo. 2003) (citing *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1167 (9th Cir. 1990)). Here, all or substantially all of the applicable factors favor abstention. Significantly, the water rights claims are not core proceedings. They are based solely on state law and do not relate at all to the Debtor's bankruptcy case. Severing the water rights claims is not only feasible, but is desirable in order to streamline the resolution of this adversary proceeding, resulting in more efficient administration of the Debtor's estate. The Court therefore declines to exercise any jurisdiction that it may have over the water rights claims.

## CONCLUSION

For the reasons discussed above, the Court finds and concludes that the Plaintiffs' Motion for Partial Summary Judgment should be denied, and the Defendants' Motion for Partial Summary Judgment should be granted, resulting in the entry of a judgment in the Defendants' favor on all three counts of the Plaintiffs' Complaint and on the first two claims for relief of the Defendants' Amended Counterclaim. The remaining three claims for relief of the Defendants' Amended Counterclaim will be dismissed without prejudice so that the parties may proceed in State Court if necessary. Mr. Case's Motion to Intervene and The Defendants' Motion to Require Joinder of Absent Annexors in Banning Lewis Ranch will be denied.

---

[20] *See Bricker v. Martin*, 348 B.R. 28, 33 (W. D. Pa. 2006) (a bankruptcy court may raise the issue of permissive abstention *sua sponte*).

ORDER ON PENDING MOTIONS
Adversary No. 11-01634 HRT

       Therefore, it is HEREBY ORDERED that:

(1)      The Motion to Intervene (docket #43) filed by Randle W. Case is DENIED;

(2)      The Plaintiffs' Motion for Partial Summary Judgment (docket #74) is DENIED;

(3)      The Defendants' Motion to Require Joinder of Absent Annexors in Banning Lewis Ranch (docket #89) is DENIED;

(4)      The Defendants' Motion for Partial Summary Judgment (docket #90) is GRANTED; and

(5)      The Court ABSTAINS from determination of the third, fourth, and fifth claims for relief of the Defendants' Amended Counterclaim.

The Court will enter judgment accordingly.

       Dated this  22nd  day of June, 2015.

BY THE COURT:

Howard R. Tallman, Judge
United States Bankruptcy Court